IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

MELISSA JACOBS, as next of kin of )
Sadie Peacemaker, deceased, )
SHANNON LEONARD, as next of kin of )
Sadie Peacemaker, deceased, )
DOUGLAS PARKMAN, individually and )
as surviving spouse of Sadie Peacemaker, )
deceased, )
ERIC ROSS, individually and as surviving )
spouse of Palma Ross, )
 )
            Plaintiffs, )
 )
v. ) Case No. 10-CV-120-TCK-TLW
 )
WATSON PHARMACEUTICALS, INC., )
WATSON LABORATORIES, INC. (Nevada), )
WATSON LABORATORIES, INC. (Delaware), )
WATSON PHARMA, INC., )
 )
            Defendant. )

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the Claims of Plaintiff Eric Ross Due to Misjoinder (Doc. 38).

### I.    Factual Background

The next of kin and surviving spouse ("Peacemaker Plaintiffs") of Sadie Peacemaker ("Sadie") filed suit against four companies (collectively "Watson"), asserting six causes of action arising from Sadie's death: (1) strict product liability, (2) negligence, (3) violation of the Oklahoma Consumer Protection Act, (4) negligent misrepresentation, (5) breach of implied warranty of fitness, and (6) gross negligence. In the Complaint, Peacemakers Plaintiffs alleged that Dr. Jerry Patton prescribed Sadie "100 mcg Watson (fentanyl transdermal system) patches;" that Sadie was wearing one of these patches at the time of her death; and that such patch caused her death. (Compl. ¶ 8.)

The patch worn by Sadie at the time of her death was allegedly designed, manufactured, and distributed by Watson and was from Lot No. 92471667.

Subsequently, Peacemaker Plaintiffs and an additional Plaintiff, Eric Ross ("Ross"), the surviving spouse of Palma Ross ("Palma"), filed a First Amended Complaint. Ross's claims arise from the death of Palma, who was wearing a 75 mcg Watson (fentanyl transdermal system) patch at the time of her death prescribed by her physician, Dr. Joseph Knight. The patch worn by Palma at the time of her death was allegedly designed, manufactured, and distributed by Watson and was from Lot No. 92462222. Ross and the Peacemaker Plaintiffs, collectively referred to as Plaintiffs, make identical allegations and assert identical claims against Watson. Specifically, they allege that Watson "knew or should have known that patients were receiving lethal fentanyl doses from proper use of the patches because of wrongful death lawsuits filed against them and other manufacturers of reservoir-designed fentanyl patches . . ., from the FDA's adverse event reporting system, and adverse reports from medical examiners and the World Health Organization." (Am. Compl. ¶ 13.)

## II.     Motion to Dismiss

Defendants filed a motion to dismiss Ross's claims due to misjoinder, pursuant to Federal Rules of Civil Procedure 20(a) and 21. Rule 20(a) provides:

> Persons Who May Join or Be Joined.
> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a). If a plaintiff is misjoined under Rule 20(a), this is not grounds for dismissing the entire case. Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action."). Instead, Rule 21 provides that a court "may at any time, on just terms, add or drop a party" or "may

2

also sever any claim against a party." *Id.* Thus, the Court must first determine if Ross is misjoined. If so, the Court must then determine whether (1) to "drop" or dismiss Ross's claims and force Ross to re-file a new lawsuit, as urged by Defendants, or (2) sever Ross's claims, as urged by Plaintiffs.[1]

The parties do not dispute that Ross's claims and Peacemaker Plaintiffs' claims present common questions of law or fact, such that Rule 20(a)(1)(B) is satisfied.[2] The parties dispute, however, whether Ross and Peacemaker Plaintiffs have asserted "any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(1)(A). Watson contends that the following averments in the Amended Complaint reveal that Ross's claims do not satisfy Rule 20(a)(1)(A)'s same transaction requirement: (1) the patches worn by decedents Palma and Sadie were different sizes; (2) the patches were from different manufacturing lots; (3) the patches were prescribed by different doctors; (4) the patches were prescribed and used at different times; and (5) decedents died nearly a year apart. Watson contends that, under these circumstances, there was no single transaction or occurrence giving rise to Peacemaker Plaintiffs' and Ross's claims. Plaintiffs argue that Rule 20(a)(1)(A)'s same transaction requirement must be interpreted broadly and that their claims are sufficiently similar in nature, time, and scope to satisfy Rule 20(a)(1)(A).

---

[1] For reasons explained below, the Court concludes that Ross is not misjoined. Therefore, the Court does not reach the issue of whether to dismiss or sever Ross's claim.

[2] The following common questions of fact and law include but are not limited to: (1) could Watson have designed a safer patch; (2) can the patches malfunction and deliver too much fentanyl; (3) does the labeling on patches sufficiently warn of the risk of death; (4) was Watson on notice of the risk of death; (5) did Watson exercise ordinary care in designing and manufacturing the patch; (6) does the Oklahoma medical examiner's office accurately test for fentanyl; and (7) did the medical examiner correctly conclude that decedents' fentanyl levels were toxic?

"Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case approach." 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice & Procedure* § 1653 (3d ed. 2010). In addressing Rule 20's same transaction requirement, courts have generally followed something akin to the "logical relationship test," which courts originally "developed as a judicial gloss on the words 'transaction or occurrence' used in the compulsory-counterclaim provision in Rule 13(a)." *Id.*

> For purposes of the [logical relationship] rule, all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The logical-relationship test employed under Rule 13(a) seems consistent with the philosophy underlying the passage in Rule 20 that allows joinder of parties whenever the claims arise out of "the same series of transactions or occurrences." Moreover, the flexibility of this standard enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20. . . . [L]anguage in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court.

*Id.* (footnotes omitted); *see also In re Prempro Prods. Liability Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (explaining that "all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence" under Rule 20(a)(1) and that "[a]bsolute identity of all events is unnecessary") (quoting *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir.1974)); *Sprint Commc'ns, L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006) (rejecting strict interpretation of Rule 20(a)(1)(A) and employing logical relationship test); *Glenn v. Purdue Pharma Co.*, No. 03CV75, 2003 WL 22243939, at *4 (N.D. Miss. Sept. 25, 2003) ("While there is no strict rule for determining what constitutes the same

4

transaction or series of transactions for purposes of Rule 20, the joinder of parties is 'strongly encouraged' so long as the joinder is fair to the parties.") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).

In determining whether various plaintiffs' product liability and/or failure to warn claims against pharmaceutical or medical device manufacturers satisfy Rule 20(a)(1)(A)'s same transaction requirements, courts have reached mixed, fact-specific results. *Compare, e.g.*, *In re Norplant Contraceptive Prods. Liability Litig.*, 168 F.R.D. 579, 581 (E.D. Tex. 1996) (holding, in failure to warn case involving national promotional materials, that the "[d]efendants' liability under theories of negligence, misrepresentation, and fraud arises out of the same series of occurrences wherein [the defendants] failed to adequately warn Plaintiffs, thus satisfying Rule 20(a)") (rejecting the defendants' proposal to limit plaintiffs to those who had the "Norplant System inserted by the same medical provider or at the same medical facility") with *In re Diet Drugs Prods. Liability Litig.*, 294 F. Supp. 2d 667, 678 (E.D. Pa. 2003) (finding that the plaintiffs' claims did not satisfy same transaction test – and were fraudulently joined – where plaintiffs all took same diet drugs, but certain plaintiffs resided far from the forum state, were prescribed the drugs by different doctors at different times, and took the allegedly defective drugs in different combinations and for differing amounts of time); *In re: Baycol Prods. Liability Litig.*, MDL No. 1431, 2002 WL 32155269, at *2-3 (D. Minn. July 5, 2002) (rejecting *Norplant* decision because it had not been followed and had been criticized by other courts); *In re Orthopedic Bone Screw Prods. Liability Litig.*, 1995 WL 428683, at *2 (E.D. Pa. July 17, 1995) (failing to join plaintiffs' claims because "plaintiffs from many states went to different doctors or teams of doctors and medical facilities and providers . . . for different reasons, and underwent surgery at different times in what could likely be over one thousand different

medical providers locations staffed by different personnel" but suggesting "that efforts be made by counsel to determine if those plaintiffs who underwent surgery at the same medical provider, involving the same manufacturer's device, or combination of devices, could . . . be grouped into a complaint or number of complaints"). The weight of authority addressing Rule 20 in the context of manufacturer product liability cases seems to require, in addition to a "logical relationship" between the claims, that "the central facts of each plaintiff's claim arise on a somewhat individualized basis out of the same set of circumstances." *In re Orthopedic Bone Screw Prods. Liability Litig.*, 1995 WL 428683, at *2.

Courts have also discussed Rule 20(a)(1)(A) in determining whether plaintiffs' product liability claims were *fraudulently* misjoined. *See, e.g., In re Prempro Prods. Liability Litig.*, 591 F.3d at 623 (defendants had not shown fraudulent misjoinder because "Plaintiffs' claims [arose] from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs"); *In re Trasylol Prods. Liability Litig.*, 754 F. Supp. 2d 1331, 1337 (S.D. Fla. 2010) (defendants had not shown fraudulent joinder where "all Plaintiffs here were administered the same drug" and "there [were] not multiple defendant manufacturers and uncertainty as to which manufacturer provided the medication ingested by the plaintiffs"); *Glenn*, 2003 WL 22243939, at *1 (defendants had not shown fraudulent joinder where plaintiffs "alleg[ed] various causes of action arising out of their use of OxyContin, a prescription drug manufactured by [the defendant] that is utilized to treat chronic pain" and the drug allegedly "caused them to suffer various injuries, including chemical dependence upon the drug"); *Alexis v. GlaxoSmithKline Corp.*, No. 02-509, 2002 WL 1022261, at *3 (E.D. La. May 17, 2002) (defendants had not shown fraudulent joinder because "[t]he common transaction/occurrence in this matter is Lotronex®," and "[t]he drug was

6

manufactured, marketed and distributed by GlaxoSmithKline; prescribed by a physician for all plaintiffs; and, dispensed and sold to one or more plaintiffs by one or more defendant pharmacy"). The ultimate question in such cases was the fraudulence and/or egregiousness of the plaintiffs' joinder attempt rather than the actual propriety of joinder. Although mindful of the different standards and burdens of proof inherent in a fraudulent joinder analysis, the Court finds reasoning regarding Rule 20(a)(1)(A) in such cases to be instructive.

The Court concludes that Ross's claims and Peacemaker Plaintiffs' claims satisfy the logical relationship test, *see In re Prempro Prods. Liability Litig.*, 591 F.3d at 622, and that such claims "arise[] on a somewhat individualized basis out of the same set of circumstances," *see In re Orthopedic Bone Screw Prods. Liability Litig.*, 1995 WL 428683, at *2. As to the logical relationship test, Ross and Peacemaker Plaintiffs' claims arise under Oklahoma law and are reasonably related in time, location, and type. According to the Amended Complaint, the two deaths occurred less than one year apart, occurred close in time after each decedent's use of the patch,[3] and occurred in Oklahoma. As to every claim asserted by Plaintiffs, there is a strong likelihood of overlapping proof and duplication in testimony. Ross's and Peacemaker Plaintiffs' design defect and failure to warn evidence will be identical. Both decedents were examined by the same medical examiner in Oklahoma City, Oklahoma. While there may be some differing medical causation evidence based on the decedents' individual circumstances, the overwhelming amount of evidence will be identical in both cases, and judicial efficiency is served by joinder. *See* 7 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice & Procedure* §

---

[3] Plaintiffs allege that Sadie filled her prescription on March 1, 2008 and was found dead on March 3, 2008. Plaintiffs allege that Palma filled for prescription on December 23, 2008 and was found dead on January 3, 2009. (Am. Compl. ¶¶ 19-20.)

1653 (3d ed. 2010) (explaining that courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court).

As to whether the claims arise from a sufficiently similar set of factual circumstances, the Amended Complaint alleges that both decedents were prescribed the patch, used the patch as directed, and died within days after filling their prescriptions for the patch. Unlike more complicated cases involving implanted devices, surgeries by various doctors across the country, the ingestion of differing combinations of allegedly defective drugs, or other claims involving more individualized facts, this case involves fairly simple allegations that lends themselves to joinder. Although the patches came from different manufacturing lots, were prescribed by different doctors, and were different sizes, such differences do not counsel against joinder in this case. The identity of the prescribing doctor would seem of little significance based on Plaintiffs' allegations – namely, that the patches were used as prescribed and resulted in quick deaths. If there are any substantial differences in the two manufacturing lots – such as a change in design – this has not been explained to the Court. Nor do the different sizes of the two patches – 75 mcg and 100 mcg – render the cases so individualized as to prevent joinder. The allegations in the Amended Complaint are that both sizes of the patch were defective and that Watson was aware of the defect. Therefore, the Court concludes that the two claims satisfy the same transaction or occurrence requirement in Rule 20(a)(1)(A).

Defendants' Motion to Dismiss the Claims of Ross Due to Misjoinder (Doc. 38) is DENIED. Ross's claims and Peacemaker Plaintiffs' claims are properly joined pursuant to Rule 20(a)(1).

**SO ORDERED THIS 7th day of June, 2011.**

*signature*
**TERENCE KERN
United States District Judge**